64527. FIRST BANK & TRUST COMPANY v. CANNON.

POPE, Judge.

Appellant First Bank & Trust Company is the assignee of a judgment against Cassville-White Associates, Ltd., under which Cassville-White was ordered to pay Bartow Associates, Inc. (the plaintiff and appellant's assignor) $55,000 plus costs. The judgment was affirmed on appeal. *Cassville-White Assocs., Ltd. v. Bartow Assocs., Inc.,* 150 Ga. App. 561 (258 SE2d 175) (1979).

Appellant filed garnishment proceedings, naming Cassville-White Associates, Thomas H. Mitchell, Jr. and William S.

Baird (the two general partners of Cassville-White) as defendants and appellee Robert L. Cannon (a limited partner of Cassville-White) as garnishee. In his answer appellee denied having in his possession any property belonging to the defendants. Appellant then filed a traverse, asserting the answer was untrue and legally insufficient. After considering the arguments presented by both parties in their briefs and at the hearing on the traverse, the trial court dismissed the traverse and entered judgment for appellee. It is from this judgment that appellant now appeals.

1. The Uniform Limited Partnership Act provides as a basic proposition that a limited partner is not bound by the obligations of the partnership. Code Ann. § 75-402 (now OCGA § 14-9-2). The statutory exceptions are not applicable here. See Code Ann. §§ 75-407 and 75-408 (now OCGA §§ 14-9-27 and 14-9-41). However, if a limited partner is liable to the partnership, a creditor of the partnership can proceed against the limited partner in garnishment to the extent of that liability. More specifically, a creditor can garnish a limited partner to the extent of his capital contribution due the partnership (Code Ann. §§ 75-418 (1) and 46-301 (a) (now, respectively, OCGA §§ 14-9-48(a) and 18-4-20(b)), to the extent of partnership property held by him (Code Ann. §§ 75-418 (2) and 46-301 (b) (now, respectively, OCGA §§ 14-9-48 (b) and 18-4-20 (c)), and to the extent of capital contribution returned to him if the creditor extended credit or whose claim arose before such return (Code Ann. § 75-418 (4) (now OCGA § 14-9-48 (d)). This last alternative is the pivotal issue here. The trial court found that appellant's assignor was not in the position of a creditor with a claim against the partnership prior to when appellee received his return of capital and concluded, therefore, that appellant could not recover against appellee. We concur.

The record shows (see also 150 Ga. App. at 561-62) that Cassville-White was formed for the purpose of buying and reselling a certain piece of property. The limited partners were to make initial payments on their partnership interest and then annual installments on or before October 1 of each year following notice to do so by the general partners. The property was purchased by the partnership and appellee was current in his payments when the property was sold on Septemeber 28, 1973. On that date appellee received a full return of his capital contribution and part of his profits. Because the property had been resold, appellee was not required by the general partners to make any further payments to the partnership.

The September 28, 1973 sale was to a group of individual investors. Cassville-White took a note and a deed to secure debt on the entire property, approximately 235 acres, and agreed in writing to

release 61.32 acres covered by the cash down payment whenever the purchasers were ready to designate which acreage they desired released. Before the purchasers selected the acreage they transferred the property, subject to the note and deed to secure debt, to Bartow Associates.[1] Bartow thereafter sought the release of 61.32 acres and Cassville-White refused to release it. This led to the original lawsuit. See 150 Ga. App. 561. This chain of events is quite material here, bearing on the issue of when appellant's claim (by virtue of standing in the shoes of Bartow Associates via the assignment) arose against Cassville-White.

Appellant asserts that the claim arose on September 28, 1973 when the contractual right to the release of the property was created. This assertion is contrary to the well established principle of law that a contract claim arises not when the contract is created, but only when the contract is breached. *Houser v. Farmers' Supply Co.,* 6 Ga. App. 102 (2) (64 SE 293) (1909); see *Waddey v. Davis,* 149 Ga. App. 308 (1) (254 SE2d 465) (1979); *Selman v. Manis,* 100 Ga. App. 422 (5) (111 SE2d 747) (1959); see also *Graham Bros. Const. Co. v. C. W. Matthews Contracting Co.,* 159 Ga. App. 546 (5) (284 SE2d 282) (1981); *Space Leasing Assocs. v. Atlantic Bldg. Systems, Inc.,* 144 Ga. App. 320 (2) (241 SE2d 438) (1977); see generally Code Ann. §§ 20-1402 and 20-1407 (now OCGA §§ 13-6-1, 13-6-7 and 13-6-2); compare Code Ann. § 109A-2—725 (2) (now OCGA § 11-2-725 (2)), pertaining to sales contracts. The undisputed facts here clearly show that the breach, that is, Cassville-White's refusal to release the property, occurred after appellee had received the full return of his capital contribution. It follows that appellant's claim, correlative to the breach, arose only after appellee received the return of his contribution. Therefore, appellant cannot avail itself of Code Ann. § 75-418 (4) and, consequently, appellant cannot reach appellee, as the trial court correctly held.

2. Appellant next contends that the court erred in concluding as a matter of law that "[t]he partnership agreement must be read in conjunction with the other documents pertaining to the formation of the partnership, particularly the certificate, in order to ascertain the intentions of the parties," citing in general support Kittay v. Dutch Inn of Orlando, Inc., 614 F2d 506 (5th Cir. 1980). Appellant's argument is that the limited partnership agreement specified the

[1] The opinion of this court in the appeal of the underlying action appears to be inconsistent with this statement of fact. See 150 Ga. App. at 562. We note this only in passing, as we are bound to the record in the case at bar. We note further, however, that either version of the facts would produce the same result reached infra.

contribution schedule for the limited partners with no provisions for cessation of payment and the trial court impermissibly looked to the filed certificate of limited partnership for the information that limited partners were to make annual payments after October 1, 1972 following notice to do so by the general partners and also to an advertising brochure and offering circular for the information that payments were to cease when the property was sold. Appellant's position is that, by the terms of the limited partnership agreement, appellee was liable to the partnership (and thus subject to garnishment) for his failure to make annual capital contributions for the four years following the sale of the property. See Code Ann. §§ 75-418 (1) and 46-301 (a); Division 1, supra.

We cannot subscribe to appellant's contention. The purpose for the formation of the partnership, as expressed in the limited partnership agreement, was to buy and resell the specified piece of property. The agreement, however, makes no provision for the effect of fulfillment of this purpose on the limited partners' liability for capital contributions thereafter. In other words, the agreement does not express the intention of parties on this point. It is ambiguous. Therefore, the trial court correctly looked to the other pertinent documents to explain the ambiguity and ascertain the intention of the parties. See Code Ann. §§ 38-502 and 20-702 (now, respectively, OCGA §§ 24-6-3 and 13-2-3).

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 18, 1982.

*Joseph C. Parker,* for appellant.
*William G. McDaniel,* for appellee.